IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LOLITA R. MATTAMU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1468 (RDA/MSN) |
| ) | |
| COUNTY OF FAIRFAX, VIRGINIA, AKA ) | |
| FAIRFAX COUNTY HEALTH ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant County of Fairfax, Virginia's Motion to Dismiss. Dkt. 12. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 13); Plaintiff Lolita R. Mattamu's Opposition (Dkt. 15); and Defendant's Reply (Dkt. 16), it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART for the reasons that follow.

### I. BACKGROUND

Plaintiff Lolita Mattamu alleges that Defendant County of Fairfax, Virginia discriminated against her in violation of the Americans With Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act of 1967 ("ADEA") during her employment as an elementary school health aide at Shrevewood Elementary School in Falls Church, Virginia. Dkt. 11, ¶¶ 4-5. This Court accepts all facts alleged within the Amended Complaint as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In Plaintiff's employment, her primary job functions as a school health aide included "providing injections, tending to student injuries, administering medications, taking and recording vital signs, administering first aid and charting." *Id.* ¶ 10. Plaintiff seemingly spent most of her twelve-year tenure at Shrevewood Elementary in Falls Church without incident. *Id.* ¶ 9.

Then, on March 15, 2019, an issue arose regarding Plaintiff's handling of a kindergarten student who reported to the health clinic with a nosebleed, including specifically whether Plaintiff violated protocol when she failed to call the student's parents before calling 9-1-1. Dkt. 13-1 at 2. Shortly after this incident, the school principal requested Plaintiff be transferred to another school. *Id.* Defendant granted the principal's request and notified Plaintiff on April 19, 2019 that she would be transferred to Armstrong Elementary School in Reston, Virginia.

In response to this transfer decision, Plaintiff alleges that she asked Defendant to allow her to remain at Shrevewood Elementary School in light of her age, as she was sixty-nine at the time, and her medical conditions. *Id.* ¶ 24. Specifically, Plaintiff sets forth that she suffers from diabetes, allergic rhinitis, hyperuricemia, hypertension and Dupuytren's contraction of her fingers. *Id.* ¶ 24. These disabilities in Plaintiff's case are visible, as her hands present with malformation and crookedness. *Id.* ¶ 15. She experiences shakiness in her hands, is unable to use her hands for extended periods of time, and encounters difficulty writing notes in a child's health chart. *Id.* ¶ 16-18. According to Plaintiff, she made this request because her ability to commute to Armstrong Elementary—a forty to sixty minute drive from her home—was impaired by her Dupuytren's contraction of her fingers, which affects her ability to drive long distances. *Id.* ¶¶ 18, 23. By contrast, Plaintiff's daily commute to Shrevewood Elementary took five minutes. *Id.* ¶ 49.

Defendant denied Plaintiff's request to remain in her position at Shrevewood Elementary School. *Id.* ¶ 25. Instead, Plaintiff took a leave of absence from April 22, 2019, through October

18, 2019, using leave time available to her under the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 30. At some point during her leave of absence, Plaintiff was told that her employment would be terminated if she did not report to work at her newly assigned school. *Id.* ¶ 27. After Plaintiff did not report for work when her leave expired, she was terminated, which Plaintiff alleges was Defendant's intent in ordering her to be involuntarily transferred to another school. *Id.* ¶¶ 20, 34. She alleges that she was the oldest employee working at her school when she was terminated. *Id.* ¶ 20.

On November 30, 2020, Plaintiff filed suit in this Court. Dkt. 1. She submitted an Amended Complaint as of right on February 2, 2021. She brings three claims for violations of ADA and one claim for a violation of ADEA. Defendant then moved to dismiss the Amended Complaint. Dkt. 13. Plaintiff opposed that motion (Dkt. 15), and Defendant submitted a reply in support of its motion to dismiss. Dkt. 16.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508)).

## III. ANALYSIS

As a threshold matter, Defendant initially argued that all claims must be dismissed for lack of personal jurisdiction because Fairfax County Health Department is a *non-sui juris* entity incapable of being sued. Dkt. 13 at 4. Plaintiff's Opposition clarifies that the only named defendant in this case is the County of Fairfax, Virginia, and that the case caption reads "County of Fairfax, Virginia, aka Fairfax County Health Department" to make clear which department within the County of Fairfax was involved in this case. Dkt. 15 at 2-3. Defendant appears to abandon its personal jurisdiction argument in its Reply, which suggests this argument was rooted in a simple misunderstanding. *See* Dkt. 16. Because there is no viable jurisdictional dispute, the Court will not dismiss the claim for lack of personal jurisdiction.

Additionally, Defendant attached to its Motion to Dismiss an exhibit—the charge of discrimination Plaintiff submitted to the Equal Employment Opportunity Commission, along with a typewritten statement from Plaintiff. *See* Dkt. 13-1. Defendant argues that the Court should include this exhibit in its analysis of the Motion to Dismiss as Plaintiff has incorporated it by reference in paragraph 8(b) of her Amended Complaint; Plaintiff has stated no objection to the

4

Court's reliance on the exhibit. *See* Dkt. 13 at 2 n.3; Dkt. 15. The Court finds that because Plaintiff has not challenged the authenticity of the exhibit, and because the document is integral to the Amended Complaint, this Court may properly consider the document at the motion-to-dismiss stage without converting Defendant's motion into a motion for summary judgment. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### A. ADA Failure-to-Accommodate Claim (Count I)

Plaintiff's first claim alleges Defendant failed to accommodate her disability in violation of the ADA. To state a claim under the ADA for a failure to accommodate, a plaintiff must allege "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Plaintiff has sufficiently alleged she has a disability within the meaning of the statute and that Defendant had notice of her disability. A plaintiff may allege a disability under the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A). Under the statute, a major life activity includes "performing manual tasks" and "working." *Id.* § 12102(2). Plaintiff's primary job functions as a school health aide included "providing injections, tending to student injuries, administering medications, taking and recording vital signs, administering first aid and charting," and she alleges that she suffered from diabetes, allergic rhinitis, hyperuricemia, hypertension and Dupuytren's contraction of her fingers. Dkt. 11, ¶¶ 10, 14. As a result of Plaintiff's disabilities, she experiences

5

difficulty using her hands for long periods of time; as a result, her ability to drive long distances or write notes in a child's chart is impaired. *Id.* ¶¶ 17-18. Therefore, she is a "qualified individual" with a disability under the ADA—i.e., someone "who, with or without reasonable accommodation, can perform the essential functions" of the job. *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 430 (4th Cir. 2015) (quoting 42 U.S.C. § 12111(8)).

Because Plaintiff worked at the same elementary school for twelve years while living with this disability, including Dupuytren's contracture, which causes her hands to appear malformed and crooked, she has adequately alleged that Defendant was on notice that her disability made her a qualified individual under the ADA. *Id.* ¶¶ 9, 15.

The third failure-to-accommodate factor is also satisfied in this case, as Plaintiff has alleged facts sufficient to find at the motion-to-dismiss stage "that with reasonable accommodation [she] could perform the essential functions of the position." In fact, Plaintiff in her Amended Complaint alleges that her initial placement at Shrevewood Elementary School was itself an accommodation, asserting that she was originally transferred to the school because it was close to her home. Dkt. 11, ¶¶ 36-37. And as Defendant acknowledges, Plaintiff "perform[ed] the essential functions of her position" without issue when she was assigned to Shrevewood. Defendant cites unpublished cases from other jurisdictions in arguing that time spent commuting should not be considered in the failure-to-accommodate analysis. Dkt. 13 at 7; *see also, e.g.*, *Nelson-Rogers v. Kaiser Permanente*, No. GJH-17-3326, 2020 WL 917067, at *8 (D. Md. Feb. 25, 2020). Here, however, Plaintiff alleges that when combined with a forty-to-sixty minute daily commute time, her disability—including Dupuytren's contraction—inhibited her ability to perform necessary duties of her job as a school health aide, such as charting.

6

Furthermore, the Court is aware of no controlling authority suggesting that a significant commute time that exacerbates a disabled employee's ability to perform an essential function of her position cannot be considered in determining whether a plaintiff has made a *prima facie* showing in a failure-to-accommodate claim at the Rule 12(b)(6) stage.  And as this Court has recently determined, a plaintiff can "adequately plead the third element of a failure to accommodate claim by alleging that [she] requested a transfer to a vacant position."  *Harris v. Powhatan Bd. of Supervisors Powhatan Cty.*, No. 3:20-CV-794, 2020 WL 7388626, at *3 (E.D. Va. Dec. 16, 2020).  Although the Plaintiff in this case alleges that she requested to remain in her current position rather than be transferred to a different location, the Court finds that the Amended Complaint contains facts sufficient to find Plaintiff has adequately alleged that a reasonable accommodation would have permitted her to continue performing the essential functions of her position.

The last factor, that Plaintiff's employer refused to make her accommodations, is easily satisfied based on the allegations in the Amended Complaint.  Dkt. 11, ¶¶ 24-28.  There is no doubt that Plaintiff plausibly alleges Defendant denied her request for an accommodation.  The Fourth Circuit's recent discussion of involuntary transfers under the ADA bolster this Court's determination to deny Defendant's motion to dismiss as to this count:

> Does an employer refuse to reasonably accommodate its disabled employee . . . when it reassigns them against their will to a vacant position, despite the availability of a reasonable accommodation that would permit the employee to perform the essential functions of their *current* position?  As set forth below, the answer, at least in the mine-run of cases, is yes.

*Wirtes v. City of Newport News*, 996 F.3d 234, 240 (4th Cir. 2021).  Accordingly, Plaintiff has satisfied the four elements of an ADA failure-to-accommodate claim at the motion-to-dismiss stage.

B. ADA Wrongful Discharge Claim (Count II)

Plaintiff's second claim alleges she was wrongfully discharged in violation of the ADA. To state a claim for wrongful discharge as it relates to her termination, Plaintiff must allege sufficient facts to show that (1) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances of the adverse employment action raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).

Although Plaintiff was a qualified individual with a disability for the reasons stated above, she has not adequately alleged that she was meeting her employer's legitimate expectations at the time of the alleged adverse employment action.[1]  The Court draws this conclusion after reading the allegations of the Amended Complaint, which leave little doubt that Plaintiff was not meeting Defendant's legitimate expectations when she was terminated.  She had reasonably drawn the irritation of her supervisor, an elementary school principal, when she violated school district protocol regarding parent notification of 9-1-1 calls.  Then, Plaintiff took a six-month leave of absence,  which ultimately led to the exhaustion of all of her leave options. Dkt. 11, ¶¶ 2, 30.

Such conduct is understandably viewed as falling short of an employer's legitimate expectations.  For one, "[i]t is hardly controversial that attendance is an essential function of most employment positions." *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 638 (E.D. Va. 2014) (citing *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994)).  And contrary to her assertions, the fact that Plaintiff did not receive written reprimands, had positive performance reviews, was not on an

---

[1] In light of the Court's finding on this element, the Court need not address whether Plaintiff has satisfied the remaining elements of an ADA wrongful discharge claim.

8

improvement plan, and did not have a history of misconduct does not mean that she was meeting her employer's legitimate expectations at the time she was terminated. "Because she is required to plead that she was meeting her employer's expectations at the time of the adverse employment action . . . the fact that [Plaintiff] performed adequately" in the years leading up to her termination is "not sufficient to meet her burden" on a Rule 12(b)(6) motion. *Young v. Giant Food Stores*, LLC, 108 F. Supp. 3d 301, 313 (D. Md. 2015) (dismissing ADA wrongful discharge claim where "it remains entirely possible that [Plaintiff] performed well for seven years and then was terminated after her performance began to decline"). Plaintiff's own allegations direct a finding that, from Defendant's perspective, she was not meeting her employer's legitimate expectations at the time of the alleged adverse action. *Id.* ¶¶ 24, 27, 33. Because the Court conducts this inquiry from "the perception of the decision maker," *Pettis v. Nottoway Cty. Sch. Bd.*, 980 F. Supp. 2d 717, 725 (E.D. Va. 2013), the Court finds that Plaintiff's well-pleaded allegations necessarily defeat any ADA wrongful discharge claim arising from her employment with the County. This claim will therefore be dismissed.

### C. ADA Retaliation Claim (Count III)

Plaintiff's third claim purports to bring a claim for "Discrimination in Violation of the Americans with Disabilities Act of 1990," but the cases her Opposition Brief cites for the elements of such a claim draw from Fourth Circuit cases regarding *wrongful discharge* under the ADA. *See* Dkt. 15 at *8 (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 278 (4th Cir. 2004) and *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18CV290, 2018 WL 4690904, at *3 (E.D. Va. Sept. 28, 2018) (citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997)). Because Count II of her Amended Complaint already alleges that cause of action, it is assumed that Plaintiff attempts to separately allege a claim of retaliation under the ADA. In order to state a *prima facie*

9

retaliation claim under the ADA, Plaintiff must sufficiently allege that "(1) [she] engaged in protected conduct, (2) [she] suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds*, 701 F.3d at 154.

Plaintiff has stated an actionable claim of retaliation under the ADA. Taking all facts alleged in the Amended Complaint as true, Plaintiff alleges that she engaged in protected conduct when she requested to be accommodated. Dkt. 11, ¶¶14-15. Requesting an accommodation is clearly a protected activity. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015) (holding that a plaintiff "clearly engaged in protected activity by submitting a request for accommodation."). Furthermore, she alleges that she suffered an adverse action when she was terminated. This too is sufficient to state a claim for adverse action. *Id.* (holding that employer "clearly took an adverse employment action by firing" employee).

As for causation, Plaintiff must allege facts sufficient to reasonably infer that her disability was the "but-for" cause of her employer's decision to terminate her. *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016) (noting that the "but-for" causation standard applies in ADA cases). Here, Plaintiff has alleged that Defendant involuntarily transferred Plaintiff to a new school location; that Defendant failed to engage in the interactive process following Plaintiff's request for an accommodation based on her disability; and that she was terminated about six months after seeking an accommodation, when her FMLA leave period expired. Dkt. 11, ¶¶ 11, 29-30, 76-78. These facts are sufficient, at least at this stage of the litigation, to infer that Plaintiff's disability was the but-for cause of Plaintiff's termination. The Court therefore denies the Motion as to Count III of the Amended Complaint.

D. ADEA Discrimination Claim (Count IV)

In her fourth cause of action, Plaintiff brings a claim of age discrimination under the ADEA. To make a *prima facie* case of age discrimination, Plaintiff must allege that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference of age discrimination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

Plaintiff inarguably meets the first condition. As Defendant concedes, her age at the time of her termination, sixty-nine, qualifies her as a member of a protected class under the ADA. For the reasons the Court has stated, Plaintiff has failed to allege facts sufficient to find that she satisfies the third element—that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the alleged adverse action. Accordingly, Plaintiff's ADEA claim must be dismissed as well.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 12) is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to Counts I and III. Defendant's Motion is GRANTED with respect to Counts II and IV because Plaintiff fails in these counts to state a claim upon which relief may be granted. Counts II and IV of the Amended Complaint are therefore DISMISSED WITHOUT PREJUDICE. Because amendment would not be futile, the Court grants Plaintiff leave to amend her complaint as to Counts II and IV consistent with this Memorandum Opinion and Order within 21 days. *See* Fed. R. Civ. P. 15(a)(2). If no amendment is filed, the dismissal will become with prejudice; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss the original Complaint (Dkt. 6) is DENIED as MOOT.

It is SO ORDERED.

Alexandria, Virginia
September 30, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge